IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSE SAUL DELIRA,<br><br>Defendants. | 4:22CR3034<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

Defendant Jose Saul DeLira has moved to suppress all statements given to law enforcement following his arrest on November 1, 2020, arguing the statements were not voluntarily given and/or were a product of threats and/or inducements. (Filing No. 30). The government bears the burden of proof as to this claim. The court will set an evidentiary hearing on this issue.

Defendant also moves to suppress evidence found during a protective sweep of his home, and the search conducted pursuant to a warrant issued following the protective sweep. Defendant does not claim the warrants were invalid because the application included false information or concealed information material to the court's probable cause finding. Rather, Defendant claims the application included evidence found during the protective sweep of his bedroom. The warrant application, warrant, and warrant return are filed of record. (Filing No. 32-1).

After reviewing those documents the court finds that, even excluding any evidence from the protective sweep of Defendant's bedroom, there was probable cause to issue the warrant. The Defendant's Fourth Amendment claim to suppress

evidence obtained through the execution of the search warrant should be denied without a hearing.

The court will, however, set an evidentiary hearing on the following Fourth Amendment issues: 1) whether the protective sweep violated the Fourth Amendment; and 2) whether, even if it was unlawful, the evidence found or arising from the protective sweep is nonetheless admissible under the inevitable discovery and independent source doctrines.

## ANALYSIS

### A. Statement of Facts

The challenged search was conducted pursuant to a warrant. Therefore, "only that information which is found within the four corners of the [warrant] affidavit may be considered in determining the existence of probable cause." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (internal citations omitted). The relevant facts within the warrant applications are as follows:

- The warrant affidavit of Officer Benjamin Rieker of the Lincoln Police Department (LPD) is based on his own investigation and the reports of other law enforcement officers who assisted him.

- On November 1, 2020, police dispatch received a 9-1-1 call indicating a domestic assault may be in progress. The call disconnected but was pinged to a location on the northwest corner of Gladstone Street and North 48th Street in Lincoln, Nebraska. Rieker and LPD Officer Steven Estrada responded to the location.

- The residence at 48th and Gladstone is a duplex. Upon arriving, the officers first knocked at the wrong door. They then knocked on the door of the connecting unit. The occupants of that location were the source of the 9-1-1 call.

- When Roger A. Vaughn opened the door to that location, Rieker immediately detected a strong odor of fresh, unburnt marijuana emanating from inside the residence. He also saw a female, now known to be Amy M. Christensen, who appeared confused and not lucid. She was not willing to step out of the residence and speak with the officers. The officers spoke to Vaughn, who stated he rented the home and resided there. The officers asked Vaughn, who was wearing gym shorts, no shoes, and no t-shirt, to step outside. He complied.

- While outside, Vaughn stated Christensen had recently began using cocaine. Christensen then became confrontational, and the officers again asked her to step outside.

- The officers asked Vaughn if he wanted to re-enter the home to get a shirt or coat and some shoes. Vaughn did so, entering the home and walking toward the back of it. As he was returning toward the front door, Rieker asked if the officers could step inside to speak where it was quiet. Vaughn consented to the officers' entry into the residence.

- Rieker crossed the threshold and stood in the area of the living room and attached kitchen. He noticed a very strong odor of fresh marijuana. He also saw a 10x10 inch digital scale, a large glass measuring cup with an unknown liquid inside, empty baking soda containers, a blue glass marijuana pipe, and a metallic gallon jug of acetone sitting on the kitchen

countertop. Based on his training and experience, Rieker knew acetone and baking soda are used as a cutting agent; that is, a substance mixed with drugs to increase the weight of the drug. He also knew a digital scale and measuring cup are often used to weigh and measure drugs for packaging and sales. Rieker saw several items of drug paraphernalia on the kitchen countertop and inside a 6x12 inch wooden box.

- LPD Officer Ryan Lawrence arrived at the scene. When he entered the house, he saw a black metallic, vertical gun safe.

- LPD Sergeant Mario Robinson was called to the scene.

- Vaughn was told that the residence was going to be seized while a search warrant was obtained, and the officers would be performing a protective sweep to make sure no one else was inside. Vaughn responded that other than an ounce of marijuana, the officers would not find anything. He further stated that a friend, Jose S. DeLira ("Defendant"), was sleeping in the south bedroom.

- The officers loudly demanded that Defendant exit the south bedroom. When Defendant did not respond, they opened the south bedroom door, notified Defendant that the residence was seized pending obtaining a search warrant, and instructed him to exit the bedroom. When Defendant glanced at his nightstand, Rieker looked there and saw, in plain view, a clear glass, bulbous pipe commonly used to smoke amphetamines/methamphetamine with a white residue inside. He also saw a glass water pipe on the floor of the south wall. The south bedroom was secured pending receipt of a warrant.

- Rieker than moved to the north bedroom. He saw in plain view a plastic baggie with fresh marijuana and paraphernalia, and a clear glass bong with a white residue inside. When he looked under the bed to make sure no one was hiding there, he saw multiple round silicone containers consistent with THC containers on the floor. The north bedroom was secured.

- Upon returning to the kitchen, Rieker saw multiple, clear sandwich bags on the north countertop. The kitchen was secured.

- The officers loudly announced that the residence was secure and exited the residence. As Rieker was exiting, Vaughn and Defendant retrieved their cell phones and began typing. The phones were seized and placed into an LPD evidence bag.

-  Rieker began preparing the search warrant application. As he was doing so, Vaughn told Sgt. Robinson that there was $3,500 in U.S. Currency in his bedroom. He further stated that his brother was recently staying at the residence, and there were two handguns in his bedroom, and long guns in the black vertical safe.

- Based on Rieker's criminal history search, as of November 1, 2020, Vaughn and Defendant were convicted felons and prohibited from possessing firearms.

A warrant to search the residence was issued by a Lancaster County Court Judge on November 1, 2020. It was searched that same day. Officers found numerous firearms, a large amount of cash, and evidence of criminal drug possession and distribution.

B. Legal Analysis

1. Probable Cause to Search the Residence

Defendant claims the evidence obtained from the residence must be suppressed, and his arrest was unlawful, because the officers illegally entered Defendant's bedroom under the pretext of a protective sweep, and if the observations made during the protective sweep of Defendant's bedroom are excised from the warrant affidavit, the remaining affidavit does not support a finding of probable cause to search the residence.

A search warrant is valid under the Fourth Amendment if it is supported by probable cause. U.S. v. Stevens, 530 F.3d 714, 718 (8th Cir. 2008). When determining whether there is probable cause to issue a search warrant, the court must consider the totality of the information presented. U.S. v. Seidel, 677 F.3d 334, 337 (8th Cir. 2012).

> A warrant is supported by probable cause if there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. . . . We assess probable cause from the viewpoint of a reasonably prudent police officer acting in the circumstances of the particular case. . . . Probable cause is a practical, factual, and nontechnical concept, dealing with probabilities. . . .The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit.

Id. (internal citations and quotation marks omitted).

Under the law, judges do not engage in a "grudging, hyper-technical" analysis of warrant applications on initial review, (United States v. Ventresca, 380 U.S. 102, 109 (1965)), and clearly not when a previously issued warrant is the subject of a motion to suppress. When "a judge has issued a search warrant upon a finding of probable cause, 'that finding deserves great deference.' " U.S. v. Proell,

485 F.3d 427, 430 (8th Cir. 2007)(quoting Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998)).

Here, the warrant affidavit states that Vaughn, who rented and lived in the residence, gave consent to enter it. Defendant does not challenge that statement. Defendant also does not challenge the officers' right to look throughout the common areas of the residence or in the north bedroom. However, he claims he had a separate privacy interest in the south bedroom he was occupying, he kept the doors closed, he refused to exit, and the officers violated his rights when they opened the door to the south bedroom and entered it without Defendant's consent. He claims there were no facts justifying this alleged intrusion as a protective sweep, and therefore the officers' nonconsensual entry into the south bedroom violated his Fourth Amendment rights.

But even if the court accepted Defendant's arguments, his claims would not negate the validity of the search warrant. The warrant affidavit states Rieker smelled the odor of fresh marijuana emanating from the residence before he even entered it. And after entering the residence, the LPD officers saw substantial evidence of drug use, possession, and drug trafficking, along with a locked gun cabinet, in the living room and kitchen areas. The LPD officers were lawfully inside Vaughn's residence. See United States v. Coleman, 909 F.3d 925, 929 (8th Cir. 2018) ("The general prohibition against warrantless entry into a home does not apply 'to situations in which voluntary consent has been obtained from a third party who possesses common authority over the premises.' "). From their vantage point standing in the common areas of the residence, the officers saw, in plain view, incriminating evidence and smelled the strong odor of raw marijuana. While they had the lawful right to immediately seize this evidence of unlawful activity, (Texas v. Brown, 460 U.S. 730, 739 (1983); United States v. Hughes, 940 F.2d 1125, 1126–27 (8th Cir. 1991)), they chose instead to secure the residence and request

a warrant to conduct a thorough search. See United States v. Reed, 733 F.2d 492, 504 (8th Cir. 1984) (holding officers' plain view sighting and smelling of marijuana, recited in a warrant application, can provide a proper basis for obtaining a search warrant).

Even excluding all references to anything observed in the south bedroom and relying solely on the information the officers obtained through plain sight and smell prior to initiating a protective sweep, the warrant application amply supported a finding of probable cause.

The warrant authorized the search of the entire residence, including the south bedroom. Defendant argues Vaughn asked Defendant to exit his room, but he refused. From this fact, Defendant argues "Vaughn's lack of control over Defendant's room shows not only a separation of activity taking place in Defendant's room from whatever was going on in the rest of the home, but also a distinction between control of Defendant's bedroom and the common areas of the home and/or the north bedroom." (Filing No. 31, at CM/ECF p. 13). Based on this assertion, Defendant claims the warrant was overly broad; that the officers needed a separate warrant to search his room. Defendant cites no case law supporting this argument.

A warrant authorizing the search of a building may be invalid if the police have reason to believe that the building contains multiple, separate residences. Marvin v. United States, 732 F.2d 669, 673 (8th Cir. 1984). But according to the uncontradicted statements within Rieker's affidavit, Vaughn told Rieker that a friend (Defendant) was sleeping in the south bedroom. Particularly in light of this statement, a reasonable officer would not interpret Defendant's mere refusal to exit the south bedroom at Vaughn's request (with police officers outside the door) as evidence that Defendant was renting a separate bedroom within Vaughn's duplex

unit and was thereby authorized to exclude others, including Vaughn, from entering that bedroom.[1]

The warrant to search the entire residence was not overbroad, and the evidence obtained by law enforcement during the search of the residence, including the south bedroom, pursuant to a warrant issued by a court should not be suppressed.[2]

2. Leon good faith

Even assuming probable cause was lacking, "a police officer cannot be expected to question" a judge's probable cause determination. United States v. Leon, 468 U.S. 897 (1984). Under the Leon good-faith exception, evidence seized pursuant to a search warrant issued by a judge will not be suppressed "if the executing officer's reliance upon the warrant was objectively reasonable." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007).

"Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."

---

[1] Of note, Defendant does not argue that the south bedroom actually was his separate rental or residence. He merely argues that under the facts presented, officers should have thought it was and crafted the warrant applications to exclude the south bedroom.

[2] The briefs indicate the defendant was arrested and his phone was seized during, or as a result of, the protective sweep—before a search warrant was obtained. It is unclear when the defendant made the statement he seeks to suppress. The government argues the door of the south bedroom would have been opened, and Defendant and his illegal drugs would have inevitably been found, when the search warrant was executed. It further argues that irrespective of Defendant's claim that the protective sweep was unlawful, the search warrant provided an independent and lawful basis for obtaining the incriminating evidence in the south bedroom and arresting Defendant.

Unlike Defendant's challenge to the warrant itself, where the four corners of the warrant define the facts to be considered, a hearing will be held on the issue of whether the protective sweep was legal, and whether, assuming it was illegal, the inevitable discovery and independent source doctrines raised in the government's brief prohibit excluding the evidence.

Leon, 468 U.S. at 922 (internal citation omitted). Suppression of evidence obtained pursuant to a warrant is appropriate only if the officers had no reasonable ground for believing that the warrant was properly issued. Id.

The search of Vaughn's residence was conducted pursuant to a warrant. There is no allegation or evidence that the judge "rubber-stamped" the warrant or that any facts material to the judge's probable cause assessment were false or omitted. For the reasons discussed above, the officers were objectively reasonable in believing the warrant application provided a sufficient basis for issuing the challenged search warrant. The search conducted pursuant to the warrant was lawful, and the evidence obtained during the search should not be suppressed.

Finally, to the extent the defendant is claiming any statements he made must be suppressed as fruit of an alleged unlawful search, the motion to suppress statements on Fourth Amendment grounds should be denied.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Defendant's challenge to the search warrant as included within his motion to suppress, (Filing No. 30), be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that as to all other Fourth and Fifth Amendment[3] challenges in Defendant's motion to suppress, (Filing No. 30), an evidentiary hearing will be

---

[3] Defendant's motion mentions the Sixth Amendment as a basis for suppression. His brief includes no Sixth Amendment arguments. Any Sixth Amendment claims are therefore deemed abandoned.

held before the undersigned magistrate judge on December 15, 2022, at 1:00 p.m. in Courtroom #2, 100 Centennial Mall North, United States Courthouse, Lincoln, Nebraska. Two hours have been set aside for this hearing.

Dated this 8th day of November, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge